Smith *v.* Aylesworth.

------◆------

## SMITH *vs.* AYLESWORTH.

The maker of a promissory note has the whole of the last day of grace in which to pay it. And if it be payable at a bank, an action commenced against the maker on the last day of grace, though it be after banking hours at such bank, will be prematurely brought, and the plaintiff should be nonsuited.

THIS action was tried by the court, without a jury, at the circuit in Monroe county, in February, 1863, and judgment was entered in favor of the plaintiff, for $213.08 dam-

ages and costs. The action is on a promissory note made by the defendant, which by its terms matured on the 6th day of October, 1861. The 6th of October being Sunday, the note became due on the 5th. The note is payable at the Monroe County Bank, which closes each day at 3 o'clock P. M. Payment was demanded and refused at 3 o'clock P. M. of the 5th of October, and on the same day this suit was commenced on the note. The defendant appealed from the judgment to this court. The only question in the case was, whether or not the note could be sued, after default, on the day it became due.

*Geo. B. Brand,* for the appellant. I. The motion for non-suit should have been granted and the complaint dismissed. The action was prematurely brought. 1st. The "days of grace" had not expired. These days are days of repentance, indulgence or respite, and in commercial states, by long and common custom or express law, "have ripened into a right as clear and definite as any conferred by positive stipulation or contract of the parties," so that a note entitled to days of grace becomes due at the same time as if these days were added to the time it had to run, and the instrument drawn without grace; and no action will lie until the last hour of the last day has expired. (*Hogan* v. *Cuyler*, 8 *Cowen*, 203. *Edwards on Bills*, 517.) The maker as well as the indorser is entitled to days of grace; they are part of the note. (*Bank of Utica* v. *Wager*, 2 *Cowen*, 712, 766.) 2d. These days are counted *exclusive* of the day on which the note falls due, and *inclusive* of the last day of grace. This is the rule in this country and Great Britain. (1 *John. Cas.* 328. 2 *Caines*, 195. 4 *Dall.* 127. 5 *Binney*, 541. 4 *Yerg.* 210. 9 *Peters*, 33. 2 *Hill*, 587. 12 *John.* 423. 13 *id.* 430. 3 *Wend.* 456. 4 *id.* 566. 1 *Ld. Raym.* 743. 2 *Caines*, 343. 4 *T. R.* 148. 5 *id.* 483.) The negotiability of the note during those three days is as perfect and unrestricted during the whole of those days as before their commencement,

and no action can be brought upon the note until the third day has expired. (*Osborn* v. *Moncure,* 3 *Wend.* 170. *Sav. Bank, New Haven,* v. *Bates,* 8 *Conn. Rep.* 405. *Thomas* v. *Shoemaker,* 6 *Watts & S.* 170. *Bevan* v. *Eldridge,* 2 *Miles,* 353. *Wiggle* v. *Thompson,* 11 *S. & M.* 452. *Cayuga Bank* v. *Hunt,* 2 *Hill,* 635. *Hopping* v. *Quin,* 12 *Wend.* 517. *Edwards on Bills,* 525.) 3d. Interest is chargeable and always computed for the three days of grace at bank; interest is here claimed *from* October 5th.

II. The law does not recognize the division of a day, unless by express agreement. Could a bank note at thirty days without grace, be sued on the thirtieth day after the bank closed its doors? Clearly not. If so, a note at one day payable at bank could be sued on the same day.

III. This must be so on principle. It is well settled by the courts of this state and in England, that a note payable at bank may be presented for payment and protested so as to bind the indorser at any hour after the closing of the bank, during the day, if an officer of the bank can be found to *receive* or refuse payment. (*Bank of Syracuse* v. *Hollister,* 17 *N. Y. Rep.* 48. *Randolph* v. *Cook,* 2 *Port.* 286. 6 *Watts & Serg.* 179. 2 *Miles,* 353. *Coleman* v. *Ewing,* 4 *Humph.* 241. *Flint* v. *Rogers,* 15 *Maine Rep.* 67. *Osborne* v. *Moncure,* 3 *Wend.* 170. 3 *Bos. & Pull.* 602. 4 *Term. Rep.* 170. *Hume* v. *People,* 8 *East,* 168. 2 *Mees. & Welsb.* 223. 2 *B. & Ald.* 188. 17 *John.* 248. 7 *How. Miss.* 448. 5 *id.* 397. 6 *Maule & Selw.* 544. 1 *Starkie,* 475.) If, then, the note may be presented and the payment demanded so as to hold an indorser at any hour of the day after banking hours, and that for that purpose " the proper business hours range through the whole day down to bed-time in the evening;" upon what principle, then, can it be affirmed that the maker is not entitled to make payment at any time on the last day of grace, during the usual business hours down " to bed time in the evening." The contract is reciprocal, and the credit clearly does not expire until the time limited by the contract

Smith *v.* Aylesworth.

has fully elapsed. The indorser is not bound, unless the maker fail to pay; but if the doctrine is held that an indorser may be bound by presentment and demand after dark, as the court of appeals hold in the 17th N. Y. Reports, then the judgment in this case cannot be sustained, unless the court hold that the same note may mature at different times as to different parties to it, and that an indorser may be bound by protest, after the action has been commenced on it, against the maker, and that he could be made liable for costs, which accrued on the note, before his liability to pay the note at all had been established.

IV. But it is said the contract is to pay during banking hours, because the note is payable at bank. Now, it is insisted there can be no distinction between commercial paper payable in the same city, whether payable at a bank, at a particular house, or elsewhere, which shall, for that reason alone, change the time when it matures, and the day when an action may be maintained on it—that payment elsewhere would have been good. So would tender, at any time during the balance of the day, if the holder could be found, without paying *additional interest,* if no action had been brought, or costs, if it had. The maker is not bound to pay at bank; he may pay the holder anywhere. The paper is made payable at bank merely for the accommodation of the maker and holder—of the maker that he may leave the money there in case the holder is not conveniently found *elsewhere*—of the holder that he may leave the note at bank for protest of indorser. This note had no indorser, and was owned by the payee, and the action is payee against maker. No demand was necessary to the action if the maker had no funds. The maker had the right to pay it to the payee at any time during the whole three days of grace, elsewhere than at the bank, and he would have been bound to accept payment or tender, and could not have maintained an action after refusing to accept such payment or tender, so that the contract to pay at bank is not absolute, but only at the election of the maker; and

if he does not pay it at bank his election to pay elsewhere during the whole days of grace continues. This is the settled rule in regard to other contracts, and why should negotiable paper be made an exception? Besides, there was no proof of banking hours, or that the bank did no business after three o'clock. Has the court a right to take judicial notice of a local or an individual custom? If the note was payable at a house, the law gives until bed-time at least to pay; can we presume that banks, which are corporations, cease to do business before private individuals? Customs, or usages which are the evidence of customs, to affect contracts must be general as opposed to local, universal and perfectly established, as opposed to special or particular, and as such must be brought to the knowledge of the parties, and the motion for nonsuit should have been granted. It has been so held in this district by Judge Johnson, in the case of *Orton & Walker* v. *Van Wirt*, Livingston county circuit, in April, 1858.

*J. Van Voorhis*, jun. for the plaintiff. I. Upon principle and upon authority, the action can be sustained. The agreement of the maker is to pay the note at the Monroe County Bank, *during banking hours.* (*Bank of Syracuse* v. *Hollister*, 17 *N. Y. Rep.* 47.) In this case the court of appeals hold that " *by making the note payable at the Bank of Utica, the maker agreed that the note should be paid during the usual business hours of the day on which it matured.*" Story, in his Treatise on Promissory Notes, (p. 267,) states the law on this question in this language : " But the better opinion, which is sustained by the current of authorities, undoubtedly is, that an action may be commenced against the maker, at any reasonable time on the third day of grace, after demand on him." Parsons, in his recent work on Notes and Bills, (Vol. 2, p. 461,) states the law thus : " But without such prior demand and refusal, an action commenced on the day of maturity is premature, *unless the note is payable at a bank,*

when it seems that suit may be commenced after bank or business hours." Vol. 1, pp. 414, 415, he says : " We incline to hold, however, both on reason and on what seems to be the weight of authority, that a note without grace may be demanded within business hours of the day of maturity, and if payment is refused, an action may be brought against the maker on the same day." This is the settled law of Massachusetts, Maine, New Hampshire, Tennessee and South Carolina. See the following cases : *Shed* v. *Brett,* (1 *Pick.* 411, 412.) In this case a personal demand of payment was made of a note on the last day of grace. Notice was mailed to the indorser on the same day. The writ against the indorser was made out on the same day, and this was the commencement of the action. It was held that the action was *not* premature. In this case it is said that " in many English cases and in New York and in this commonwealth, it has been settled that an action lies against the drawer of a bill *immediately* on the dishonor of the bill." *City Bank* v. *Carter,* (3 *Pick.* 414,) is to the same effect. *Church* v. *Clark,* (21 *Pick.* 310.) This action was on a promissory note made by the defendant, payable at a bank. The note became due April 5, 1837. The writ was issued and the defendant's goods attached at one minute after 12 in the morning of that day. It was objected by the defendant that there could have been no default in payment until the *expiration of the business hours of the bank,* on the 5th April. It was so held by the court. It was also said, " By making a note payable at a bank, the effect of the contract is, that the note shall be paid *during the usual banking hours* at such bank, and there is no default on which an action can be commenced *until the close of such bank hours. (See* 3 *E. D. Smith,* 53.) *Greeley* v. *Thurston,* (4 *Greenl.* [*Maine,*] 479.) The head note to this case is as follows : " Bills of exchange and negotiable notes should be paid on demand if it be made at a reasonable hour, on the day they fall due ; if not then paid, the acceptor or maker may be sued on that day." This is a very strong case : the

action was tried in 1825. The judge said, " It is remarkable
that no decision directly on this point has been adduced, nor
have we, after considerable research, been able to find *one.*"
*These are the pioneer cases on this question.* (*Greenleaf's
Overruled Cases,* 196.) *Coleman* v. *Ewing,* (4 *Humphrey,*
[*Tenn.*] 241.) The head note is as follows : " The contract
of the maker of negotiable paper is broken by a refusal or
neglect to pay on the last day of grace, within reasonable
time after demand made, and the holder has a right of action
on the same day." This case is *precisely in point.* The
circumstances and the pleadings were precisely like those in
this case. The leading cases on the question are there refer-
red to. *Dennie* v. *Walker,* (7 *N. H. Rep.* 201.) " But it
may now be considered as *settled,* that notice may be given
and *suit brought* against the indorser, on the last day of
grace, after protest has been made, the note being then con-
sidered dishonored." The cases on this question are there
collected and referred to. *Wilson* v. *Williman,* (1 *Nott &
McCord,* [*S. C.* ] 440.) The head note is : " The payee of
a promissory note can commence an action against the maker
on the third day of grace." This was tried in 1819, before
three justices. *Staples* v. *Franklin Bank,* (1 *Metc.* [*Mass.*]
43.) The head note is : " The maker of a promissory note
is bound to pay it upon demand made at any seasonable hour
of the last day of grace, and may be sued on that day—if he
fail to pay on such demand." This last case contains a col-
lation of all the decisions on this question, English and Amer-
ican. It was decided in 1840, in the supreme judicial court
of Massachusetts. A demand so as to charge an indorser,
cannot be made at a bank after business hours. (3 *E. D.
Smith,* 48.) It follows from this, that the payment must be
made during business hours. I take it, that after the time
has arrived at which a demand for the purpose of charging
an indorser is void, the holder has a cause of action against
the maker. (*See* 17 *N. Y. Rep.* 47.) *Osborn* v. *Moncure,*
(3 *Wend.* 170,) is the only case, English or American, that

holds a contrary doctrine. That case, however, is not in point, and does not touch the question at issue in this. In that case the note was payable at large. There was no agreement, express or implied, to pay at any particular hour of the day; consequently payment at any time during the business hours of the day was a performance of the contract of the maker. There could be no action until there was a default. The demand was made not of the maker but of his clerk. The writ was issued before 3 P. M. of the last day. The current of authorities cited is to the effect, that a *demand and refusal*, at any *seasonable* hour of the last day, will support an action on that day. But in the case in Wendell, there had been no sufficient demand. It should have been *personal.* This case in Wendell stands alone, without another reported case to corroborate or sanction it, and with very many and more recent and respectable cases supporting a contrary doctrine. The holder of a note, for the purpose of charging an indorser, has as much time to make the presentment for payment, as the maker has to pay in. It follows that when the time has arrived that a presentment would be void for the purpose aforesaid, the maker must be in default and liable to an action therefor, if the note has been presented duly by the holder at the place of payment. This follows from the rule in 3d E. D. Smith, above cited, which holds that presentment cannot be made after banking hours.

*By the Court,* JOHNSON, J. The action is brought by the payee, against the maker, of the note in question. Of course no demand was necessary in order to charge the defendant. The only question in the case is whether the action, having been commenced after banking hours at the bank where the note was payable, on the last day of grace, is not prematurely brought. This precise question was decided in *Osborn* v. *Moncure,* (3 *Wend.* 170,) upon full argument and mature deliberation. That case, like this, was an action between payee and makers, and the action was brought before three

o'clock in the afternoon of the last day of grace, but after demand of payment and refusal. The court unanimously held that the makers had the whole of the third day of grace in which to make payment, and that an action commenced upon the third day, though after demand, was brought prematurely and could not be maintained. Sutherland, J. who delivered the opinion of the court, says : " It is undoubtedly true in relation to other contracts, that the party has until the last instant of the day to make payment ; and I perceive no reason for making negotiable paper an exception to the general rule." It would be difficult to assign any valid reason for any distinction. Negotiable paper, by law, becomes due on the third day of grace, precisely as other contracts do on the day when the term of credit expires according to their date, and not otherwise in any respect, that I am able to perceive. That is the law in regard to such paper, and it is part and parcel of the obligation, precisely as much as though it were written in the note. The only difference between the two cases is, that in this case the note was payable at a bank, while in that case it was payable generally, at no particular place. But in that case demand was actually made before action brought, and no question raised that the demand was insufficient, or in any respect improper. There is no essential difference, therefore, in the two cases. I am aware that the rule is laid down differently in *Chitty on Bills*, which the court notice in the case referred to.

*Parsons*, in his recent work on notes and bills, also lays down the rule as follows : " We are however of opinion that after demand and refusal on that day an action may be at once maintained." He also says : " But without such prior demand and refusal, an action commenced on the day of maturity is premature, unless the note is payable at a bank, when it seems that a suit may be commenced after bank or business hours." (2 *Pars. on Notes and Bills*, 461, 462.) Several cases are cited, decided in other states, to sustain the

Smith *v.* Aylesworth.

rule as laid down in the text, though the author admits that the rule may not be positively determined by authority. If it be true, as our supreme court has decided, that the maker has up to the last instant of the last day of grace in which to make payment, as part of his contract, I do not see how a demand before that time, or the expiration of the business hours at a bank where the note is payable, can alter the time of the note becoming due and payable. Generally the law does not notice the fractions of a day, and it is difficult to see how the act of a payee or holder, in making demand of payment at any particular hour in the day, or the custom of a bank in closing its doors at a particular hour, is to work a severance of time, so that a note payable on a particular day, and not at any specified hour of such day, shall be both due, and not due, on the same day. Certainly there is nothing in the contract, nor, so far as I am advised, in the mercantile custom, by which a payee by his own voluntary act can shorten the day or the hour of payment. It seems to me our rule is the only safe and consistent one, and that it ought to be followed, especially by this court. All that is decided in the *Bank of Syracuse* v. *Hollister*, (17 *N. Y. Rep.* 46,) is that a presentment of a note and demand of payment by a notary, of himself, at the bank door after banking hours and after the bank was closed, was a sufficient presentment to charge an indorser. This only relates to the rule between holder and indorser, and is to the effect that a holder is not confined to banking hours in making his demand, but may make it at any time in the day, afterwards, provided he can find a proper person at the place, to answer. If this decision has any bearing upon the present case, it is rather against the plaintiff than in his favor. It necessarily holds that the demand was made before the time for the payment of the note had expired. Otherwise the demand could not have been held sufficient to charge the indorser.

On the whole I am of the opinion that the action was pre-

maturely brought, and that the nonsuit should have been granted.

The judgment must therefore be reversed, and a new trial ordered, with costs to abide the event.

[Monroe General Term, September 7, 1863. *Welles, E. Darwin Smith* and *Johnson,* Justices.]