## THE STATE OF NEW YORK NATIONAL BANK, APPELLANT, *v.* SAMUEL D. COYKENDALL, RESPONDENT, IMPLEADED, ETC.

*A party taking an accommodation note as collateral for a past-due check is not a* bona fide *holder for value — it does not extend the time of payment of the check.*

A bank receiving an accommodation note, which has been diverted from the purpose for which it was intrusted to the payee, as collateral security for a past-due check, does not acquire the right of a *bona fide* holder thereof for value.

*Railroad Company* v. *National Bank* (102 U. S., 14) disapproved.

The taking of a note payable in the future, by a bank, as collateral security for a past-due check, does not extend the time of payment of the check, and thereby make the receiver of the note a *bona fide* holder thereof for value, in the absence of evidence of an agreement to extend such time of payment.

APPEAL by the plaintiff, the State of New York National Bank, from a judgment of the Supreme Court, entered in the Ulster county clerk's office, in favor of the defendant Samuel D. Coykendall against the plaintiff, on May 2, 1890; and also from an order denying the plaintiff's motion to set aside the verdict of the jury, in favor of the defendant Coykendall, and for a new trial made on the minutes of the court.

The action was tried at the Ulster Circuit before the court and a jury, at which a verdict was rendered in favor of the defendant Samuel D. Coykendall.

*F. L. Westbrook,* for the appellant.

*A. T. Clearwater,* for the respondent.

LEARNED, J. :

This is an appeal by the plaintiff from a judgment, entered on a verdict rendered for the defendant and from an order denying a new trial.

The action is to recover on a note of $5,000 made by The Emerson Manufacturing Company, by F. A. Waters, treasurer, to the order of E. E. Waters, dated February 22, 1887, payable at six months. The indorsements are as follows:

EDW'D E. WATERS,
  43 *Park Place, New York.*
F. A. WATERS,
  *Kingston.*

This last indorsement being erased by lines drawn through it.
 S. D. COYKENDALL, *Kingston, N. Y.*

Pay to the order of
  F. A. WATERS.
   F. A. WATERS,
    *Kingston, N. Y.*

The jury found a verdict for Coykendall and against the other defendants.

Francis A. Waters, had been cashier of plaintiff. On January 11, 1888, Charles W. Deyo was made such cashier, and Waters became clerk, acting as teller. About a week after Deyo became cashier he found among the cash items a check as follows:

[MEMORANDUM.]

     "NEW YORK, *January* 9, 1888.

"North River Bank pay to the order of E. E. Waters, five thousand dollars.

        "F. H. FORBES."
Indorsed: E. E. WATERS.

It was counted as cash. He directed F. A. Waters to take it up. It had been put there by him. On the twenty-sixth of January Deyo was informed that Waters had directed a clerk to charge that check as a loan. Deyo then took the note in question as collateral to the check. The check remained still in the bank, until it was produced at the trial. Waters testifies that when the cashier was unwilling to accept the Forbes check, Waters said he would give them the note in question as collateral to the check. He further testifies that two or three months after the check was given (viz., in January, 1888), he gave notice to the bank about the collection of the check, told them he wanted them to collect it and that the cashier wrote to Forbes and received a reply.

This shows, as the cashier stated, that the check remained in the possession of the bank after the note was turned out as collateral

thereto. In connection with this we must refer to the testimony of Coykendall, which is that the note in question was indorsed by him at the request of Francis A. Waters, and that at the time Waters told him that he desired to use the note to take up other paper which Coykendall had indorsed for him.

The question raised by the plaintiff on this point of the case is, whether the taking of the note by the bank as collateral security for the check, gave the bank the right of a *bona fide* holder for value. The plaintiff relies on *Grocers' Bank* v. *Penfield* (69 N. Y., 502) and *Continental National Bank* v. *Townsend* (87 id., 8).

But the ground of the decision in these cases is that the accommodation note was held "without restriction as to the mode of using it." And the distinction is made between such cases and those in which "the note has been diverted from the purpose for which it was entrusted to the payee." In the latter class of cases an antecedent debt is not a sufficient consideration to make a person a *bona fide* holder for value, as against the party whose indorsement has thus been wrongfully diverted. (*Stalker* v. *McDonald*, 6 Hill, 93; recognized in *Grocers' Bank* v. *Penfield, ut supra.*)

It is well known that the Supreme Court of the United States holds a different view from that of the highest court of this State. (*Railroad Company* v. *National Bank,* 102 U. S., 14.) But we must follow our own decisions, and it is unnecessary to examine the cases in other jurisdictions; especially when our own rule has been maintained in late decisions. (See *Lawrence* v. *Clark*, 36 N. Y., 128; *Taft* v. *Chapman*, 50 id., 445; *Phœnix Ins. Co.* v. *Church*, 81 id., 218.)

It would seem that there could be no question that the note was indorsed by Coykendall for the specific purpose of meeting indorsements of his already existing. If that, however, were in dispute the matter was fairly submitted to the jury, and there is no ground to question the correctness of their decision. The note was not used to take up previous indorsements of Coykendall, but was used as collateral to an instrument on which he was in no way liable. This was a plain diversion of the note and brings the case within the rule above cited in our decisions.

It is urged by the plaintiff that the taking of this note by the bank as collateral to the Forbes check was an extension of time,

and hence that plaintiff is a *bona fide* holder for value. But no agreement to extend time was shown ; and merely taking security as collateral does not extend the time of the principal debt, even if the security is payable at a day subsequent to the time when the principal debt became payable. Men very frequently borrow money for a month or two, giving as collateral railroad bonds, or the like, not payable for many years. But the time for payment of the debt is not thereby extended. There was a dispute of fact in this case, whether the indorsement of F. A. Waters, which was before that of Coykendall, had been erased before Coykendall signed, or was erased afterwards. This question was submitted to the jury.

There was also submitted to the jury the question whether this erasure, if an erasure was thus made, was made intentionally and fraudulently, or whether it was made by accident. The court charged, in substance, that if an erasure was made in a material part and fraudulently, Coykendall would be discharged. Now, in the charge on this point, it seems to us that the learned court was very favorable to the plaintiff.

It would probably not be claimed that a merely accidental and not intentional alteration of a note would render it void. As, for instance, if ink were accidentally spilled upon the note so as to efface a material part. But if the alteration is in a material part and is intentionally made, it is said that it is not necessary to show a fraudulent intent. When the intent is not fraudulent it would seem that the party may resort to the original indebtedness. (*Booth* v. *Powers*, 56 N. Y., 22 ; *Meyer* v. *Huneke*, 55 id., 412.) That right is of no consequence here, because there was no original indebtedness, since the indorsement was simply for accommodation. But here the alleged alteration was material. It released F. A. Waters from the position of prior indorser. It must have been intentional, because it was made by drawing lines across the name. Therefore, we see no error in the charge of the learned court injurious to the plaintiff. It is plain that if an alteration is made in an instrument affecting the rights of a signer thereto without his consent, he cannot be bound by the instrument. Because the instrument sued upon was never executed by him.

That the note in question was altered at some time or other is not questioned. The bank took it with these lines drawn through

F. A. Waters' name. If they had sued Waters as first indorser, he could have shown that his name was erased. And the mere fact that his name could still be read would not disprove the erasure.

There are some questions made as to the nature and effect of the Forbes check; as to the meaning of the word "memorandum." But we do not see that these questions affect Coykendall. The action was against all the parties to the note; but this appeal is only against Coykendall, who was successful on the trial.

The court held that if the maker of the check had no funds in the bank on which it was drawn, and was insolvent, the neglect of plaintiffs to forward the check for collection would not discharge the parties to the note.

The court charged the jury that if they came to the conclusion that the bank was guilty of neglect in not presenting the check in proper time, all the defendants in the action would be exonerated. The jury found for the plaintiff against all the defendants except Coykendall. Therefore, they could not have found that there was neglect on the part of the bank in not presenting the check. And they must have found that the check was a valid obligation. Therefore, it is not material on this appeal to inquire as to the correctness of the charge in respect to the neglect of the bank to present that check. The jury must have placed the verdict in Coykendall's favor on one or the other of the grounds previously discussed. We do not see any error in the case requiring a new trial on this appeal.

The judgment and order must be affirmed, with costs.

LANDON, J., concurred; MAYHAM, J., not acting.

Judgment and order affirmed, with costs.